IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| MACQUARIE MORTGAGES USA, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PREMIER TITLE INSURANCE AGENCY, INC., a Utah corporation; DUSTIN CHRISTENSEN, a married man; OTIS L. ADAMS, a married man; SAND CANYON CORPORATION, a California corporation, f.k.a. OPTION ONE MORTGAGE CORPORATION; WELLS FARGO BANK, N.A., a national banking association, as trustee for OPTION ONE MORTGAGE LOAN TRUST 2007-3; UTAH LABOR COMMISSION, a governmental agency; DRAPER HEIGHTS SUBDIVISION H.O.A., a Utah non-profit corporation, a.k.a. / d.b.a. DRAPER HEIGHTS HOMEOWNERS ASSOCIATION and as DRAPER HEIGHTS PLANNED UNIT DEVELOPMENT; ABC COMPANY 1 through 5, inclusive; and DOE 1 through 5, inclusive;<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:12-CV-674<br><br>Judge Dee Benson |

Before the Court are the parties' cross motions for summary judgment. (Dkt. Nos. 100 &

102.) The Court heard oral argument on these motions on January 22, 2014.[1] Having

---

[1] At that same hearing, the Court heard argument on Plaintiff's Motion for Leave to File Third Amended Complaint. (Dkt. No. 107.) That motion was granted on February 18, 2014. (Dkt. No. 120.)

1

considered the parties' arguments, briefs, and the relevant law, the Court now issues the following memorandum decision and order.

## BACKGROUND

In January 2004, Macquarie Mortgages USA, Inc. ("Macquarie") loaned a $490,000 line-of-credit (the "Line") to Dustin Christensen. (Pl.'s Mot. for S.J. ¶ 1.) The Line was secured by a deed of trust (the "Macquarie Trust Deed") on Christensen's home. (Pl.'s Mot. for S.J. ¶ 3.) Premier Title Insurance Agency, Inc. ("Premier") served as both Macquarie's escrow agent for the closing of the line-of-credit, and Macquarie's trustee under the Macquarie Trust Deed. (Pl.'s Mot. for S.J. ¶¶ 3-5.)

Pursuant to the loan agreement, Christensen was entitled to borrow funds on the Line until the earlier of the Line's maturity date, January 2034, or Christensen's delivery to Macquarie of: (1) his written election to terminate the Line *and* (2) the funds necessary to pay-in-full any outstanding balance owed on the Line. (Third Am. Compl., Ex. A at 1, 6-7, 11.) The loan agreement contemplated an "Early Termination Fee" at a fixed percentage of the initial credit limit in the event that the Line was paid off and terminated at any time prior to the thirty-sixth month following the date the Line was funded. (Id. at 7.) Specifically, the loan agreement included an Early Termination Fee of 1% of the initial credit limit of $490,000, if the loan was terminated and paid off between "during or after the 12th and before the 24th month after the date the loan is funded." (Id.)

For estate planning purposes, on June 3, 2004, Christensen transferred ownership of the home to Benjamin Davis, as Trustee of the Rose Park Trust. (Def.'s Mem. In Opp'n, Ex. A ¶ 8.) In April 2006, Davis sold the home to Otis Adams. (Id. at ¶ 9.) Adams used a mortgage loan

from Novastar Mortgage, Inc. ("Novastar") to purchase the home. (Third Am. Compl. ¶ 25.) Premier was chosen to provide escrow and title services to Davis, Adams, and Novastar. (Id.)

Novastar's closing instructions to Premier included the warning that Premier "not close or fund [Adams's loan] unless ALL conditions to these closing instructions and any supplemental closing instructions have been satisfied." (Pl.'s Mot. for S.J., Ex. 6 at 1.) The Specific Closing Instructions required that Novastar's new deed of trust be recorded in a first lien position against the home. (Id. at 2.)

On April 6, 2006, Premier, acting on behalf of Davis, sent Macquarie a Request For Payoff Statement (the "Payoff Statement"), requesting the payoff amount for the Line in connection with Davis's sale of the home to Adams. (Pl.'s Mot. for S.J., Ex. 4 at 1.)

In response to the Payoff Request, Macquarie sent to Premier a "Payoff Statement" dated April 17, 2006. (Pl.'s Mot. for S.J., Ex. 5 at 1.) At the top of the Payoff Statement was the following disclaimer:

> PAYOFF QUOTE VALID ONLY FOR TODAY'S DATE
> PAYOFF FUNDS ACCEPTED VIA WIRE TRANSFER ONLY
> LINE OF CREDIT TERMINATION REQUEST MUST BE SENT.

(Id.)

The body of the Payoff Statement further read: "[t]o terminate your Equity Line of Credit, we must have a written request, signed by everyone on the Equity Line of Credit Agreement. . . . If this written request is not received, your Equity Line of Credit will not be terminated." (Id.) The "TOTAL AMOUNT TO PAY LOAN IN FULL" was $511,284.08, which was comprised of $490,000.00 in principal, $6,411.62 in unpaid interest, $4,900.00 in prepayment penalty, and $9,972.46 in escrow/impound overdraft fees. (Id.)

On April 17, 2006, Premier, acting on behalf of Davis, wired $511,284.08 to Macquarie. (Third Am. Compl. ¶ 18.) That same day, Davis and Adams closed on the sale.

3

Shortly after the closing, Christensen contacted Macquarie by phone to discuss the status of the Line. (Def.'s Mot. for S.J., Ex. B ¶ 15.) Christensen informed Macquarie that the home had been sold to Adams and requested that the automatic draft from Christensen's bank account be cancelled and the mortgage released. (Id.)

On April 21, 2006, Christensen again contacted Macquarie and informed Macquarie that he no longer owned the home and that the mortgage needed to be released. (Id. at ¶ 16.) On April 24, 2006, Christensen sent Macquarie a fax seeking confirmation that the Line had been paid in full and had a zero balance. (Id. at ¶ 17.) On May 1, 2006, Christensen received a fax from Macquarie confirming that the Line had a zero balance, but also indicating that Christensen had a credit limit of $490,000. (Id. at ¶ 18.) Christensen later contacted Macquarie again to inquire why Macquarie was holding open the Line. (Id. at ¶ 19.) Christensen again told Macquarie that he had sold the home. (Id.) Macquarie responded that the Line had not been terminated, and therefore Christensen could continue to use the Line despite the fact that he no longer owned the home. (Id.) At some point thereafter, Christensen again started borrowing against the Line.

In November 2006, Adams refinanced his Novastar mortgage loan with a new loan from Option One Mortgage Corporation (the "Refinancing"). (Pl.'s Mot. for S.J. ¶ 28.) Equity Title Insurance Agency, Inc. ("Equity Title") rendered title and escrow services for the Refinancing. Option One Mortgage Corporation later became known as Sand Canyon Corporation, Inc. ("Sand Canyon"). (Id.) Wells Fargo is the successor-in-interest to Sand Canyon with regard to the Refinancing.

In connection with the Refinancing, Terrie Lund of Equity Title contacted Premier to discuss the status of the Macquarie Trust Deed. (Pl.'s Mot. for S.J., Ex. 9 ¶ 7.) According to

Lund, Premier employee Pamela Landgren incorrectly assured Lund that the obligations underlying the Macquarie Trust Deed had been paid off. (Id. at 8.) Premier also provided Equity Title with a copy of the lender's title policy that Premier had issued to Novastar, which insured Novastar's deed of trust in first position. (Id.) Landgren claims she does not recall ever speaking to Lund, and further claims that at no time during her employment at Premier did she ever speak with third parties about the status of loan obligations or the validity of deeds of trust. (Decl. of Pamela Landgren at ¶¶ 4-5.)

On September 15, 2008, Christensen defaulted on his repayment obligation under the Line. (Pl.'s Mot. for S.J. ¶ 18.)

On August 11, 2011, Premier erroneously caused a Reconveyance Deed to be recorded (the "Reconveyance"). (Pl.'s Mot. for S.J. at 2.) On July 18, 2012, Premier caused a Rescission of Reconveyance to be recorded (the "Rescission"). (Id.) There were no intervening liens between the recording of the Reconveyance and the recording of the Rescission. (Id.)

On July 9, 2012, Macquarie filed its initial Complaint in this case. (Dkt. No. 1.) On August 8, 2012, Macquarie filed its First Amended Complaint. (Dkt. No. 7.) On May 14, 2013, Macquarie filed its Second Amended Complaint, which alleged six causes of action ("claims for relief"): (1) judicial foreclosure – against Christensen, Adams, Sand Canyon, and Wells Fargo; (2) reconveyance without satisfaction – against Premier; (3) negligence per se – against Premier; (4) breach of contract – against Premier; (5) negligence, against Premier; and (6) breach of fiduciary duty, against Premier. (Dkt. No. 69.)

On August 27, 2013, Macquarie, Wells Fargo, and Adams, stipulated that the Rescission was effective to nullify the Reconveyance. (Dkt. No. 94, Joint Motion for Judgment Under Rule 54(b).) That joint motion also sought to dismiss Macquarie's first cause of action, for judicial

foreclosure, as well as Adams's and Wells Fargo's Counterclaims against Macquarie. (Id.) On August 28, 2013, the Court entered a Judgment and Order, confirming the stipulation between Macquarie, Wells Fargo, and Adams. (Dkt. No. 96, Judgment and Order of Dismissal with Prejudice). As a result, Adams, Sand Canyon, and Wells Fargo were all dismissed from this action. On September 6, 2013, by way of clarification, the Court further ordered that the Judgment and Order of Dismissal with Prejudice is only binding on the parties who had stipulated to the joint motion. (Dkt. No. 99, Order.)

On October 21, 2013, Macquarie filed a Motion for Leave to File Third Amended Complaint. Macquarie's Third Amended Complaint eliminated its first three causes of action from its Second Amended Complaint, and asserted additional allegations in support of its fourth, fifth, and sixth causes of action.[2] On February 18, 2014, the Court granted Macquarie's Motion to File Third Amended Complaint. Macquarie filed its Third Amended Complaint on February 19, 2014.

## ANALYSIS

The April 2006 escrow and the November 2006 Refinancing are the bases for each of Macquarie's causes of action. Macquarie argues that Premier's failure to submit a signed loan termination request in April 2006, and Premier's misinforming Equity Title in November 2006, caused Macquarie damage.

Premier seeks summary judgment on each of Macquarie's claims arguing, *inter alia*, that the claims were not raised within the applicable statutes of limitations.[3] During oral argument,

---

[2] Specifically, Macquarie omitted its claim of judicial foreclosure based on the Judgment and Order of Dismissal with Prejudice entered by the Court on August 28, 2013, and voluntarily omitted its claims for reconveyance without satisfaction, and negligence per se.

[3] The relevant statutes of limitations are as follows:
    Breach of contract:

6

Macquarie acknowledged that absent tolling, its claims are barred by the applicable statute of limitations. However, Macquarie argues that the statute of limitations for each claim should be tolled because of Premier's misleading conduct, and/or exceptional circumstances.[4]

The issue of tolling is governed by state law. Fratus v. DeLand, 49 F.3d 673, 675 (10th Cir. 1995). The Utah Supreme Court has recognized three circumstances in which the discovery rule, which allows for tolling if a party could not have reasonably discovered the existence of a claim within the limitations period, applies:

> (1) in situations where the discovery rule is mandated by statute; (2) in situations where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct; and (3) in situations where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the discovery of the cause of action.

Walker Drug Co., Inc. v. La Sal Oil Co., 902 P.2d 1229, 1231 (Utah 1995).

The parties agree that the discovery rule is not mandated by statute in this case. Instead, Macquarie argues that both the misleading conduct and the exceptional circumstances exceptions, apply here. Each argument is considered in turn.

A. Misleading Conduct

Under the misleading conduct doctrine, "Utah courts toll the running of the limitations period if a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct." Colosimo v. Roman Catholic Bishop, 2007 UT 25, ¶ 38,

---

      if based on a written contract – six years, Utah Code Ann. § 78B-2-307
      if based on an unwritten contract – four years, Utah Code Ann. § 78B-2-309
Negligence – four years, Utah Code Ann. § 78B-2-307
Breach of fiduciary duty – four years, Utah Code Ann. § 78B-2-307.

[4] Macquarie also argues in passing that the statute of limitations should be tolled based on "fraud or mistake." (Pl.'s Mot. for S.J. at 54 quoting Utah Code Ann. § 78B-2-305(3)). However, because Macquarie's complaint does not seek relief on the grounds of fraud or mistake, the Court finds this statute inapplicable.

156 P.3d 806 (additional quotations and citation omitted).  In order to qualify for application of the misleading conduct doctrine, "a plaintiff must demonstrate either (1) that the plaintiff neither knew nor reasonably should have known of the facts underlying his or her cause of action before the fixed limitations period expired; or (2) that notwithstanding the plaintiff's actual or constructive knowledge of the facts underlying his or her cause of action within the limitations period, a reasonably diligent plaintiff may have delayed in filing his or her complaint until after the statute of limitations expired."  Russell Packard Dev., Inc. v. Carson, 2005 UT 14, ¶ 44, 108 P.3d 741.

In this case, Macquarie asserts that the misleading conduct rule applies because Premier closed on the April 2006 escrow without first obtaining a signed loan termination request from Christensen.  (Pl.'s Reply at 10.)  Macquarie also argues that Premier misinformed Equity Title as to the Line balance and status of Macquarie's Trust Deed, which prevented Macquarie from uncovering Premier's transgressions in connection with the April 2006 escrow.  (Id.)

First, the Court notes that the parties' competing claims make it unclear whether or not Premier actually misinformed Equity Title.  However, even assuming Premier had misinformed Equity Title, the surrounding circumstances prevent Macquarie's allegations from rising to the level of misleading conduct.

It is undisputed that in April and May of 2006, Christensen contacted Macquarie on numerous occasions, and informed Macquarie that the home had been sold.  As Macquarie's own records indicate, it was also aware that Christensen had not submitted a signed termination request.  (Pl.'s Mot. for S.J., Ex. 10 at 1.)  Further, the April 2006 transaction resulted in publicly recorded documents reflecting the transfer of ownership of the property.  Based on these facts collectively, Macquarie knew, or should have known, all of the facts underlying its cause of

8

action no later than May 2006, well before the statute of limitations had run. Carson, at ¶ 44. Further, nothing in the record before the Court indicates that a reasonably diligent plaintiff in Macquarie's position would have delayed in filing his complaint until after the statute of limitations expired. Id. Accordingly, Macquarie does not qualify for tolling under the fraudulent concealment exception.

B. Exceptional Circumstances

To determine when exceptional circumstances warrant the application of the discovery rule, Utah courts "apply a balancing test to weigh the hardship imposed on the claimant by the application of the statute of limitations against any prejudice to the defendant resulting from the passage of time." Snow v. Rudd, 2000 UT 20, ¶ 11, 998 P.2d 262. However, when a plaintiff raises claims of trustee misconduct, the Utah Supreme Court has found "in essence that the balancing test has already been applied and to not apply the discovery rule would lead to unjust results." Estate of Davis v. Davis, 265 P.3d 813, 816 (Utah 2011) (internal citations omitted) cert. denied, 272 P.3d 168 (Utah 2012).

This trustee rule stems from the fact that trustees are often "in the position of acting alone on behalf of its beneficiary and without the beneficiary's knowledge." Walker v. Walker, 404 P.2d 253, 257 (Utah 1965). Therefore, the rule only applies "until something has occurred to give a clear indication to [the beneficiary] that [the trustee] has repudiated his trust; or the circumstances are such that [the beneficiary] must be charged with knowledge of such repudiation." Id.

Here, Premier was Macquarie's trustee at the time of both the April 2006 Payoff Statement and the November 2006 Refinancing. However, as previously stated, it is undisputed that by no later than May 2006, Macquarie knew that the home had been sold despite neither

9

Christensen nor Premier having submitted a signed line of credit termination request. Because of these actions, Macquarie either was, or should have been, aware that Premier had repudiated its trust. Therefore, Macquarie also fails to qualify for tolling under the exceptional circumstances exception.

## **CONCLUSION**

The statute of limitations for Macquarie's causes of action all began to run no later than May 2006. Thus, each statute of limitation had expired by May 2012 at the very latest. Macquarie failed to file its initial complaint until July 2012. Because Macquarie does not qualify for tolling under either the misleading conduct or exceptional circumstances exceptions, Macquarie's Motion for Summary Judgment is DENIED and Premier's Motion for Summary Judgment is GRANTED.

DATED this 22nd day of February, 2014.

Dee Benson
United States District Judge